UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


MELISSA HIGNELL ET AL.                          CIVIL ACTION
Plaintiffs
                                                NO:    19−cv- 13773
v.

CITY OF NEW ORLEANS,                            SECTION "B" (1)
Defendant


**AMICUS BRIEF OF THE VIEUX CARRE PROPERTY OWNERS,
RESIDENTS AND ASSOCIATES, INC. AND THE FAUBOURG
MARIGNY IMPROVEMENT ASSOCIATION, INC.  IN SUPPORT OF
THE OPPOSITION OF THE CITY OF NEW ORLEANS TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The Faubourg Marigny Improvement Association ("FMIA")  and the Vieux Carre Property

Owners, Residents and Associates ("VCPORA"),  are Louisiana nonprofit membership

corporations. FMIA and VCPORA, and the members of each organization, actively promote the

maintenance of the distinct character of the historic residential neighborhoods of each

organization.

The previously uncontrolled spread of short term rental ("STR") properties in the historic

neighborhoods of New Orleans threatened the distinct character of those residential

neighborhoods, including particularly the French Quarter and the Faubourg Marigny. Indeed, the

proliferation of STRs threatened the continuing viability of the residential character of our City's

historic neighborhoods.

Therefore, VCPORA and FMIA submit this Amicus Brief in support of the "City of New

Orleans Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (the City's

1

Opposition").[1] In their motion the plaintiffs herein seek partial summary judgment on some of the claims they asserted in their November 25, 2019 Complaint.

The Introduction to the City Planning Commission's 2018 Study of Short Term Rental Housing provides:

> With relatively lenient STR regulations currently in place, **the City Planning Commission staff recognizes the need to strengthen regulations,** protecting New Orleans' housing stock, **ensuring New Orleans remains a place first and foremost for its citizens, and protecting the character of New Orleans' unique neighborhoods**.

Exhibit A to the City's Opposition (Doc. 39-1), at page 3 of 173; emphasis provided.

*Amici* and their respective members support the City's stated goals as set forth in the quoted section of the Introduction to the Commission's extensive 2018 study, and support the City's actions to limit the proliferation of STRs in our historic neighborhoods by, among other things, the adoption of City ordinances M.C.S. 28,156 and M.C.S. 28,157.

The City's challenged actions have been taken in good faith, in support of the interests of the City's residents and citizens. *Amici* support in full the arguments advanced by the City in its Opposition and supporting documents, and intend to avoid repeating arguments made by the City.

### A.    The City's Actions Do Not Constitute a Constitutional Taking of the Short Term Rental Permits of Any Plaintiffs.

Plaintiffs contend that enforcement of the City's ordinances regulating the short term rental of residential properties has resulted in a Fifth Amendment "taking" of the short term rental licenses previously possessed by some of the plaintiffs.[2] That argument is set forth in Section 3 of

---

[1]    The City's Opposition is Record Document ("Doc.") 39.

[2]    In their Complaint and in their Motion for Temporary Restraining Order and Preliminary Injunction, the plaintiffs contended that enforcement of the City's ordinances regulating short term rentals constituted a constitutional taking not only of the plaintiffs' **short term rental licenses**, but a constitutional taking of plaintiffs' **residential properties** themselves. Plaintiffs' motion for summary judgment does not seek relief with respect to the contention that the immovable properties themselves have been taken by the City pursuant to the Fifth Amendment.

Plaintiffs' Memorandum in Support of Motion for Summary Judgment (Doc. No. 33-1), at pp. 4-7 thereof ("Plaintiffs' Supporting Memorandum").[3]

In its Opposition (Doc. 39), the City of New Orleans (the "City") explained convincingly that plaintiffs' short term rental permits did not constitute a constitutionally protected property interest, and that the plaintiffs have not offered evidence that the City has revoked or terminated any existing permit of any plaintiff to provide short term housing.

Amici offer the following additional reasons why the plaintiffs are not entitled to the injunctive and declaratory relief they seek with respect to the short term rental permits that some of the plaintiffs previously possessed:

**First,** the plaintiffs have not offered evidence that the City revoked or terminated any short term rental permit of any plaintiff; that is, the plaintiffs have not presented evidence that any plaintiff's existing short term rental permit was "taken" by the City. **Second,** the remedy for a taking of property pursuant to the Fifth Amendment is an award of "just compensation" or damages, not injunctive relief.

### 1. The Plaintiffs Have Not Offered Evidence That the City Revoked or Terminated Any Plaintiff's Existing Short Term Rental Permit.

The plaintiffs have not offered evidence that the City has revoked or terminated any

---

[3]     References herein to the "Plaintiffs' Supporting Memorandum" refer to Document 33-1, which was filed timely on February 14, 2020 in compliance with the Court's February 7, 2020 Scheduling Order (Doc. 32). The Plaintiffs later filed another "Memorandum in Support of Summary Judgment" (Doc. 35-2) **untimely** on February 26, 2020, and without leave of Court authorizing the untimely filing. *Amici* respectfully contend that the supporting memorandum filed by the plaintiffs after the Court-imposed deadline for the plaintiffs' submissions should not be considered in support of the plaintiffs' Motion for Summary Judgment.

Similarly, the Declaration of plaintiff Jimmie Taylor (Doc 35-11) and the Declaration of John C. Quinn (Doc. 35-3) were also filed untimely on February 26, 2020, well after the February 14, 2020 deadline established by the Court for plaintiffs' filing of their Motion for Summary Judgment and the supporting documents. *Amici* respectfully contend that those untimely filed documents should not be considered in support of plaintiffs' motion for summary judgment.

existing permit of any plaintiff to provide short term housing. Instead, as briefly noted in the City's Opposition,[4] the plaintiffs' Declarations state, variously, that the City "refused to grant" such a permit, or "denied" such a permit to the declarant, or similarly indicated the declarant's inability to obtain a City permit for short term rental of the declarant's residential property.

Specifically, the plaintiffs' declarations state as follows with respect to short term rental licenses:

Paragraph 5 of Plaintiff Melissa Hignell's Declaration (Doc. 33-4) states in part: "the City of New Orleans subsequently **refused to give me a short term rental license** because I lack a homestead exemption for the Alvar Street house." Emphasis supplied.

Paragraph 5 of Plaintiff Garett Majoue's Declaration (Doc. 33-5) states in part: "In May, 2019, the City of New Orleans **refused to grant me a short term rental license** for the additional bedroom suite located on my Soniat Street property, stating as the reason that the suite must have its own, separate address and electric meter." Emphasis supplied.

Paragraph 5 of the Declaration of Plaintiff Russell Frank (Doc. 33-3) states: **"The short term rental license I sought** for my home on Ursulines Street **was denied by the City of New Orleans**." Emphasis supplied. In identical language, Paragraphs 7 and 9 of Mr. Frank's Declaration state that the short term rental licenses he sought for other residential properties "was denied by the City of New Orleans."

The Declaration of Plaintiff Samantha McRaney (Doc. 33-7) states only that "Ordinances passed by the City of New Orleans deny me the right to advertise our home to guests for less than thirty days stay." *Id.,* Paragraph 9.[5]

The Declaration of Plaintiff Robert McRaney (Doc. 33-6), husband of Samantha McRaney, also states only that "Ordinances passed by the City of New Orleans deny me the right to advertise our home to guests for less than thirty days stay." *Id.,* Paragraph 9. [6]

The plaintiffs have failed to present evidence that the City has deprived any plaintiff of an

---

[4] Opposition, at page 10 and fn. 42.

[5] Mr. and Mrs. McRaney own and reside in their home in the French Quarter. They object to the provisions of the City ordinances that prohibit short term rentals in the area of the French Quarter where they reside. Their argument is briefly addressed in Section B of this Brief, *infra*. Mr. and Mrs. McRaney do not contend that they have ever possessed a short term rental license from the City.

[6] The timely-filed declarations of Mr. and Mrs. McRaney are unsigned. After the deadline imposed for the plaintiffs' submissions had passed, the plaintiffs filed additional declarations of Mr. and Mrs. McRaney (Doc. 35-9 and Doc. 35-10, respectively) that are signed, without seeking court authorization for the late filings or to substitute executed declarations for the unsigned ones previously filed. It is not clear if the text of the late-filed declarations of Mr. and Mrs. McRaney is identical to that of the unsigned declarations that were filed timely.

existing permit for short term rental of any plaintiff's property residential property. [7] Plainly, the City's denial of, or refusal to grant, such a permit does not constitute a taking of an existing property right of any plaintiff.

      **2.**      **The Remedy for A Fifth Amendment Taking Is an Award of Just Compensation, Not Injunctive or Declaratory Relief.**

Even if the City's actions did result in a taking of any plaintiff's existing permit for short term rental of any plaintiff's property residential property, such a plaintiff would not be entitled to injunctive or declaratory relief. Rather, it is well settled that the remedy for a Fifth Amendment taking of private property is an award of just compensation, or damages.

There are two types of "takings" under the Fifth Amendment: (1) a direct, physical appropriation of property, real or personal, depriving the owner of the rights to possess, use and dispose of the property; and, as explained in *Horne v. Department of Agriculture*,[8] (2) a "regulatory taking," i.e., a governmental restriction on the use of property that went "too far."

Unquestionably, the plaintiffs herein have asserted a regulatory taking. That is, plaintiffs do not allege that the City has acquired the physical possession and use of plaintiffs' properties or licenses. Rather, they allege that the City's ordinances regulating short term rentals of residential properties have deprived some of the plaintiffs of their City licenses to rent certain residential properties for terms less than 30 days.[9]

---

[7] Plaintiff Jimmie Taylor submitted a Declaration well after the deadline established by the Court for Plaintiffs' submissions in support of their motion for summary judgment. See footnote 3. For that reason, his Declaration should not be considered in support of Plaintiffs' Motion for Summary Judgment. But Mr. Taylor's Declaration, like all the plaintiffs' declarations, does not state that the City has revoked or terminated any existing permit of Mr. Taylor to provide short term housing. Rather, Mr. Taylor's Declaration states only that "[t]he City of New Orleans has refused to grant a short term rental license" for any property owned by Mr. Taylor. Taylor Declaration, Paragraph 5.

[8] ―― U.S. ――, 135 S.Ct. 2419, 2427, 192 L.Ed.2d 388 (2015), citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922).

[9] As noted in the previous subsection of this Amicus Brief, the plaintiffs have completely failed to present any evidence that the City revoked or terminated any plaintiff's short term rental permit.

In *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536, 125 S.Ct. 2074, 2080, 161 L.Ed.2d 876 (2005), the Supreme Court stated:

> The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not "be taken for public use, without just compensation." (internal citation omitted).

The Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power.... It is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Lingle, supra,* at 537, 125 S.Ct. 2074, 2080 (emphasis in original).

The remedy for a Fifth Amendment taking is obvious and is set forth in the Amendment itself – just compensation. In *First English Evangelical Lutheran Church v. County of Los Angeles*,[10] the Supreme Court held that the remedy for a regulatory taking, as with a physical taking, is compensation. There the Court stated:

> Consideration of the compensation question must begin with direct reference to the language of the Fifth Amendment, which provides in relevant part that "private property [shall not] be taken for public use, without just compensation." As its language indicates, and as the Court has frequently noted, this provision does not prohibit the taking of private property, but instead places a condition on the exercise of that power. This basic understanding of the [Fifth] Amendment makes clear that it is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking. Thus, government action that works a taking of property rights necessarily implicates the "constitutional obligation to pay just compensation." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

*Id.,* at 314-15, 107 S.Ct. at 2385-86; emphasis in original, internal citations omitted.

As that quotation from the *First English Evangelical* decision makes clear, there can be no Fifth Amendment taking unless there has been "an otherwise **proper interference**" with property

---

[10] 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

rights. An unauthorized government action cannot constitute a taking because it does not meet the public use or public purpose requirement of the Fifth Amendment. Thus, a state law or City ordinance that takes property cannot be invalidated pursuant to the Fifth Amendment if it promotes a public purpose, because the Fifth Amendment does not prohibit the taking of property. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S. Ct. 2321 (1984).

But if there is a Fifth Amendment taking, the remedy is just compensation, not invalidation of the legislative enactment, as explained in *First English Evangelical, supra*. Because a suit for compensation is available as a remedy for the plaintiffs' alleged taking of private property for a public use, injunctive relief is not available. *Ruckleshaus v. Monsanto Co.,* 467 U.S. 986, 1016, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984).

The plaintiffs have failed to present proof of a Fifth Amendment taking. Indeed, the plaintiffs have failed to state a claim for a Fifth Amendment taking. Even if the plaintiffs had presented proof of a Fifth Amendment taking, they are not entitled to injunctive relief.

>  **B.**  **The Homestead Exemption Requirement for Certain STR Licenses Serves a Legitimate and Rational Governmental Purpose and Does Not Deprive Plaintiffs of a Constitutional Right.**

In their Supporting Memorandum (Doc. No. 33-1), the plaintiffs make a somewhat truncated argument that City Ordinances 28,156 M.C.S. and 28,157 M.C.S. violate the due process rights of plaintiffs because those ordinances "prohibit homeowners from home sharing any home except their primary residence for which they have a homestead exemption; and prohibit homeowners in the French Quarter and Garden District from any home sharing whatsoever." [11] *Id.,* p. 6.

---

[11] Footnotes omitted. "Home sharing" is the term plaintiffs use in their Memorandum to describe short term rentals. See page 1 of the Plaintiffs' Supporting Memorandum. Doc. 33-1.

The City has the right to prohibit short term rentals completely in the French Quarter and Garden District, because of the expansive powers of local governments to regulate land use in different areas, particularly in historic areas. In *City of New Orleans v. Dukes*,[12] the Supreme Court recognized that, pursuant to the Louisiana Constitution and the City's Home Rule Charter, the City of New Orleans can enact unique rules for the New Orleans Vieux Carre to "preserve its distinctive charm, character and economic vitality." [13] In that case the Court applied a rational basis review to an ordinance that completely banned new food vendors in the Vieux Carre.[14]

And requiring the owner of a short term rental property in certain historic districts to have a homestead exemption ensures that there will be an onsite operator present. As demonstrated in the City Planning Commission's 2018 Short Term Rental Study, Exhibit A to the City's Opposition (Doc. 39-1), the City has a substantial interest in regulating the STR market, ensuring life safety, and protecting the residential character of the buildings and neighborhoods in which STRs are operating.  Having an onsite operator or local host alleviates the various health, safety and welfare issues such as noise, trash, violation of local ordinances and lack of accountability. Ensuring that an onsite operator is present is appropriately accomplished by requiring a homestead exemption. That requirement ties the ownership and occupation of the home to the use of it as an STR, and requires accountability from the owner to ensure health, safety and welfare are protected.

The homestead exemption requirement was enacted by the Council to ensure that STR operators are homeowner residents with accountability to the City and to their neighbors, with the ability to quickly and effectively address neighborhood complaints about their guests.  The

---

[12]  427 U.S. 297, 96 S.Ct. 297 (1976).
[13]  *Id.,* at 299.
[14] *Id*., at 303.

homestead exemption requirement bears a substantial relationship to the objective of preserving residential integrity.  This is a rational and legitimate governmental purpose.

Because there is no invidious discrimination, no suspect classifying criteria and no infringement of a fundamental interest or freedom, the City's ordinances will withstand challenge if there is any conceivable rational basis to support the ordinance provisions. [15]

The plaintiffs cite a recent Texas state court of appeal decision, *Zaatari v. City of Austin,*[16] in which the Court held that the City of Austin had to demonstrate a **compelling state interest** to justify the validity of the City's Ordinances at issue therein that regulated short term rental properties. In that decision, the Court found that the Austin ordinances implicated the Texas state constitutional provision guaranteeing citizens the right to assemble,[17] which that Court determined, was a fundamental freedom.

But in its lengthy discussion of that issue,[18] the *Zaatari* Court determined that the right of assembly contained in the Texas constitution, on which that Court's decision was based, is far broader than the right of assembly provision in the U.S. Constitution. See slip opinion at pp. 24-35, and particularly the *Zaatari* Court's conclusion, at p. 35, that "we hold that the right to assemble **granted by the Texas Constitution** is a fundamental right." Emphasis supplied.

Thus, that element of the *Zaatari* decision is inapplicable to the case at bar because that decision is based upon a provision of the Texas Constitution, and not upon a provision of the U.S. Constitution.

---

[15] *Shelton v. College Station,* 780 F. 2d 475, 477 (5th Cir.1996) (en banc).
[16] No. 03-17-00812-CV, Tx. Court of Appeals, 3rd District, at Austin, Nov. 27, 2019 (slip op.), 2019 WL 6336186.
[17] Tex. Const. Art 1, Sec 27.
[18] At pages 12-42 of the slip opinion.

Moreover, other recent decisions that examine the validity of legislation regulating short term rentals have concluded that the rational basis standard of review is to be applied to such ordinances.

In *Murphy v. Walworth County*, 383 F. Supp. 3d 843 (E.D. Wisc. 2019), the Court rejected the plaintiff's argument that an ordinance regulating short term rentals burdened a fundamental right to "residential use." Instead the Court found that the ordinance was an economic regulation. *Id.,* at 850, fn. 3. The Court noted that such an ordinance failed rational basis scrutiny only if "no sound reason for the action can be hypothesized," or if it were "wholly impossible to relate to legitimate governmental objectives," citing *Lauth v. McCollum,* 424 F.3d 631, 634 (7th Cir. 2005 *Id.,* at 850-51.[19]

The Court concluded that residences used for short term rental are not similarly situated as residences used for long-term use, because, among other differences, there is a different rate of utility usage and

> the amount of trash that people create on vacation tends to be greater (e.g., due to disposable travel items and prepackaged food and drink; and **the interests that tourists have in preserving the quality of life in a neighborhood tends to be lower because they will soon leave.**

*Id.,* at 851; emphasis supplied.

The *Murphy* Court then noted that the rational basis standard of review did not require the defendant county to supply proof of the assertion underlying the ordinance's rationale. Rather, the standard is whether the Court "'can reasonably conceive of any justification' based upon the evidence provided. *Shaw v. Smith,* 206 Fed. App'x 546, 548 (7th Cir. 2006)."

---

[19] This is the same standard applied by the Fifth Circuit to its review of local land use ordinances. See *Shelton v. College Station, supra,* note 15, 780 F.2d at 477.

Another decision in which the Court concluded that an ordinance regulating short term rentals was properly reviewed using the rational basis standard is *Styller v. Aylward,* 16 Misc. 000757 (Mass. Land Court Sep. 19, 2018), 2018 WL 4502015, where the Court noted:

> **There are . . . significant differences between short-term and long-term rentals that allow municipalities to distinguish between them for regulatory purposes**. . . .**Transient tenants have less of a stake in the properties they occupy than longer-term tenants — less of a stake in keeping noise down, trash picked up, and maintaining good relationships with the neighbors, for example — since they will soon be gone and never return. Moreover, even with the best-behaved short-term renters, numerous short-term rentals are more disruptive to a neighborhood than longer-term rentals because they reduce stability**. Faces and vehicles will be ever-changing, making "community" more difficult to establish and maintain, which in turn affects residents' abilities to distinguish between those with a cause to be in the neighborhood and those who might not.

*Id.,* at * 5; emphasis added.

Plainly, in the instant case, plaintiffs have failed to establish that no sound reason for the City's challenged ordinances can be hypothesized, or that it is wholly impossible to relate the challenged ordinances to legitimate governmental objectives.

The City's exhibits, including Exhibit A to the City's Opposition, demonstrate that the City Planning Commission and the City Council thoroughly studied the issue of short term rentals, held numerous public hearings on the specific ordinance provisions at issue herein, and acted deliberately with a legitimate government interest that best served the health, safety and welfare of the citizens and residents of the City as a whole.

## C.     Conclusion

For the foregoing reasons, and for the additional reasons asserted by the City in its Opposition, *Amici*, the Faubourg Marigny Improvement Association and the Vieux Carre Property Owners, Residents and Associates, respectfully submit this Brief in support of the City's

Opposition to Plaintiffs' Motion for Summary Judgment, and pray that the plaintiffs' requested relief be denied.

Respectfully submitted,

*/s/ Galen S. Brown*
GALEN S. BROWN
SULLIVAN STOLIER SCHULZE, LLC
909 Poydras Street, Suite 2600
New Orleans, LA  70112-4000
Telephone: (504) 561-1040
Email:  gbrown@sullivanstolier.com
**Counsel for the Vieux Carre Property Owners,
Residents and Associates and the Faubourg
Marigny Improvement Association**

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon the counsel of record for all parties on the 9th day of March, 2020, by electronic notice in accordance with Local Rules.

*/s/ Galen S. Brown*
GALEN S. BROWN

12