UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MELISSA HIGNELL, ET AL.                          CIVIL ACTION


VERSUS                                           NO. 19-13773


CITY OF NEW ORLEANS                              SECTION "B"(1)

ORDER AND REASONS

I.   NATURE OF THE MOTION AND RELIEF SOUGHT

Before the Court are plaintiffs' motion for partial summary judgment (Rec. Doc. 35), defendant City of New Orleans response in opposition (Rec. Doc. 41), defendant's motion for summary judgment (Rec. Doc. 48), defendant's post-hearing brief (Rec. Doc. 49), plaintiffs' post-hearing brief (Rec. Doc. 50), defendant's response to plaintiffs' post-hearing brief (Rec. Doc. 51), plaintiffs' response memorandum in support of their motion for partial summary judgment (Rec. Doc. 52), plaintiffs' response in opposition to defendant's motion for summary judgment (Rec. Doc. 53), plaintiffs' supplemental memorandum in opposition to defendant's motion for summary judgment (Rec. Doc. 62), and defendant's supplemental memorandum in support of its motion for summary judgment (Rec. Doc. 66). Accordingly,

**IT IS ORDERED** that plaintiffs' motion for partial summary judgment (Rec. Doc. 35) is **DENIED;**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Rec. Doc. 48) is **GRANTED**.

## II.  <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiffs brought the current action on November 22, 2019, asserting violations of the Commerce Clause, First, Fourth, Fifth, and Eight Amendments of the United States Constitution, against defendant City of New Orleans, pursuant to 42 U.S.C. §§ 1983, 1988.[1] Rec. Doc. 1 at ¶ 1. On December 16, 2019, the New Orleans City Council adopted ordinances that amended the City's Comprehensive Zoning Ordinance ("CZO") and City Code to authorize short term rentals ("STR"). *Id.* at ¶ 9. The CZO defines an STR as rental of all or a portion of a residential dwelling unit for a period of less than thirty consecutive days. *Id.* at ¶ 9. CZO Art. 26.2; City Code Art. XI, § 26-613, *et seq*. These ordinances were effective beginning April 1, 2017. *Id.* The ordinances have since been repealed and replaced by ordinances M.C.S. 28,156 and M.C.S. 28,157, which impose rules and regulations regarding STRs in the New Orleans Area. *See* Rec. Docs. 6-4 & 6-5. Notably, the new

---

[1] Plaintiff Melissa Hignell is a citizen of Portland, Oregon, and a resident of New Orleans, Louisiana, who owns a home located at 814 Alvar Street, New Orleans, Louisiana. Rec. Doc. 1 at ¶ 3. Plaintiff White Spider, LLC, is a limited liability company doing business in New Orleans, Louisiana that provides services to STR owners. *Id.* at ¶ 4.  Plaintiff Garett Majou is a citizen of New Orleans, Louisiana, who owns a home on Soniat Street in New Orleans. *Id.* at ¶ 5. Plaintiffs Bob and Samantha McRaney are citizens of New Orleans, Louisiana, and own a home on Royal Street in New Orleans. *Id.* at ¶ 6. Plaintiff Jimmie Taylor is citizen of New Orleans, Louisiana, who owns homes on St. Anthony Street and Barracks Street in New Orleans.

ordinances: (1) require all STRs have a permit to operate[2]; (2) prohibit all STRs within the French Quarter and Garden District[3]; (3) prohibit social or commercial events taking place in STRs[4]; (4) require proof of a homestead exemption submitted to the Department of Safety and Permits, with a homeowner's ownership interest being at least 50%[5] to qualify for an STR permit; (5) require homeowners to "keep guest registration records"[6] and allow for a "reasonable inspection[]" of the premises[7]; and (6) an assessment of penalties and fines for noncompliance with the ordinances. Plaintiffs filed a motion for temporary restraining order and/or preliminary injunction (Rec. Doc. 6) to enjoin defendant from enforcing M.C.S. 28,156 & M.C.S. 28,157. This Court denied plaintiffs' motion for temporary restraining order and/or preliminary injunction on December 30, 2019. Rec. Doc. 24 (Minute Order).

Parties subsequently filed above noted motions, etc. A hearing with oral argument was held on both motions on May 27, 2020, via telephone. Rec. Doc. 68 (minute entry).

---

[2] M.C.S. 28,156 20.3.LLL.1 at p. 15.
[3] M.C.S. 28,156 20.3.LLL.1 at p. 16; M.C.S. 28,156 20.3.LLL.4 at p. 19.
[4] M.C.S. 28,156 20.3.LLL.3 at p. 18.
[5] M.C.S. 28,156 20.3.LLL.3(h) at p. 19.
[6] M.C.S. 28,157 § 26-618 ("The owner shall maintain Guest registration records, which shall contain the actual dates of occupancy, total number of Guests per party, per stay, and the rate(s) charged. . . records shall be maintained for three years and shall be provided to the city upon request. . . personally identifiable Guest information may be redacted.").
[7] M.C.S. 28,157 § 26-618 A(9). M.C.S. 28,157 § 26-624.

### III. <u>LAW AND ANALYSIS</u>

### a. Fed. R. Civ. P. 56 Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

Additionally, "[a] partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." *Streber v. Hunter*, 221 F.3d 701, 737 (5th Cir. 2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).

**b. Fifth Amendment Claim**

The takings clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution, states: "nor shall private property be taken for public use, without just compensation." U.S. Const. V.; *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). The Fifth Circuit has held that to prevail on a takings claim, the plaintiff "must demonstrate that he has a protectable property interest." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). The Fifth Circuit further noted that the constitution does not create property interest, but rather protects them. *Id*. Thus, in order to determine whether a property interest has been taken, "courts must 'resort to existing rules or understandings that stem from an independent source such as state law' to define the range of interests that qualify for protection as 'property' under the Fifth and Fourteenth Amendments.'" *Id*. (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992). Further, to have a property interest "'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id*. (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Defendant contends plaintiffs' assertion that they had a vested property right in their STR licenses and permits is not supported

by relevant caselaw nor the City's prior STR ordinances. This Court agrees.

Defendant cites *Dennis Melancon, Inc. v. City of New Orleans* in support of their contention that plaintiffs did not have a vested property right in their STR permits. Rec. Doc. 48 at 9-10. In *Dennis*, the Fifth Circuit vacated the district court's grant of a preliminary injunction enjoining the City from enforcing permit regulations with respect to taxicabs because the taxicab permit holders "[had] not demonstrated a substantial likelihood of establishing that [the ordinances] effected a regulatory taking." *Id.* at 272.[8] The Court explained that the heavily regulated nature of the permits and the City's power to exercise control over those permits resulted in the permit holders having, if anything, a "limited bundle of rights" in connection therewith. *Id.* Further, the court noted that the permit extended to taxi drivers was "'in the nature of a personal privilege or license,' because it 'may be amended or revoked by the power authorized to issue it.'" *Id.* at

---

[8] Plaintiffs cite to *Bowlby v. City of Aberdeen*, 681 F.3d 215 (5th Cir. 2012) for the contention that the STR permit granted by the City constituted a property interest for a claim under the Fifth Amendment's takings clause. However, the Fifth Circuit held that "privileges, licenses, certificates, and franchises . . . qualify as property interests for the purposes of *procedural due process*." (citing *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)(emphasis added). In that case the plaintiff's Fifth Amendment claim was dismissed and not appealed to the Fifth Circuit. Thus, the case is inapposite in determining whether the license is considered a property interest with respect to a Fifth Amendment takings claim, and rather applies to an analysis to determine property interests for due process claims.

273 (quoting *State ex rel. Hutton v. City of Baton Rouge*, 47 So. 2d 665, 668 (1950)).

Similar to the permits in *Melancon* and the taxicab industry in New Orleans, land use and zoning have historically been extensively regulated. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68 (1981)("The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities. But the zoning power is not infinite and unchallengeable; it 'must be exercised within constitutional limits.'"). Further, any reliance on the permits by plaintiffs' is unreasonable. The previously enacted ordinances pertaining to STRs, Sec. 26-616 of M.C.S. 27,204 reads:

> **The [STR] license permit shall be *valid one year*** from the date of issuance. **Renewal permits** shall be **issued in the same manner** as initial permits, <u>**and**</u> **requires:** (1) Providing the department an updated copy of any of the documents required by section 26-614, if applicable. (2) **A revised attestation, indicating *continued compliance* with the requirements in section 26-614.** (3) A revised list of [STR] platform(s) that will be utilized to advertise or solicit the property for use as a [STR].(4) Proof of payment of all applicable taxes and fees as required by law.

Rec. Doc. 48-9 at 4-5 (emphasis added). The indication that the permits are valid for one year and subject to requirements for re-issuance should not have induced STR owners to suspect that their permits would automatically renew, but that they would be subject to the enumerated requirements set forth in the section. Further,

**STR permits were defined in the original city ordinances as "a privilege, not a right" which "may be revoked or not renewed based on non-compliance with the requirements of the Comprehensive Zoning Ordinance . . ."** *Id.* at 1, Sec. 26-613[9] (emphasis added).

Similarly, defendant has not effectuated a regulatory taking by revoking the STR permits. The United States Supreme Court has held that for a regulatory taking to be effectuated, a party must have "sacrifice[ed] all economically beneficial uses in the name of the common good" and to "leave his property economically idle." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992). Here, plaintiffs do not have an economically idle investment without the ability to engage in the STR market. Plaintiffs may reside in these homes or use the properties as long-term rentals. *Alliance for Neighborhood Prosperity, et al. v. City of New Orleans*, No. 19-11125 (CDC Par. of Orleans, 11/19/19). Further, the argument that a municipal lien or shutting off electricity to a home renders an entire home "economically idle", is speculative at best.

As plaintiffs have not shown they will prevail on the merits of a Fifth Amendment takings claim, either regulatory or actual, their motion for summary judgment fails. Instead, defendant City

---

[9] *See also Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560, at *9 (E.D. La. Mar. 30, 2020) ("[T]he holder of a privilege or license may be entitled to certain procedural due process protections, but to prevail on a takings claim a plaintiff must establish the taking of a constitutionally protected property interest. *The STR license is a privilege, not a right*.")(internal citations omitted)(emphasis added).

has shown that it is entitled to a judgment as a matter of law that the ordinances do not effectuate a taking. Accordingly, defendant is entitled to summary judgment.

### c. Fourth Amendment & Due Process Rights

The Fourth Amendment assures: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . .and [that] no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. IV. Plaintiffs contend that the STR ordinances violate the Fourth Amendment by requiring that homeowners keep record of and deliver to the Department of Safety and Permits "for three years, . . . the names of their guests, the number of guests in their party, the length of their stay, the dates of their stay, and the rate they pay; and to turn over these non-public records to the City on demand . . ." Rec. Doc. 35 at 9. Defendant contends that the ordinances are constitutional because: (1) they provide opportunity for a hearing prior to the assessment of penalties; (2) they do not authorize nonconsensual warrantless searches of property; and (3) the City's Department of Safety and Permits and hearing officers do not have conflicts of interest that violate due process.  Rec. Doc. 48 at 14, 17.

"[A]bsent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (U.S. 2015). In *Camara v. Municipal Court of the City and County of San Francisco*, the Supreme Court held that municipal inspections of private homes must comply with the Fourth Amendment. 387 U.S. 523, 534, (1967). In *Camara's* companion case, *See v. Seattle*, the Supreme Court held that the Fourth Amendment also applies to municipal inspections of commercial premises. 387 U.S. 541, 542 (1967). Here, the ordinance pertaining to guest records provides:

> Guest Records. The Owner shall maintain Guest registration records, which shall contain the actual dates of occupancy, total number of Guests per party, per stay, and the rate(s) charged. Such records shall be maintained for three years and shall be provided to the City upon request, in accordance with applicable law. Personally identifiable Guest information may be redacted.

Rec. Doc. 48-4 at 10 (City Code Sec. 26-618 A. 2)).

Plaintiffs rely on two decisions in support of their contention that the ordinances are unconstitutional and violative of the Fourth Amendment. First, plaintiffs rely on *Patel*, where a municipal ordinance required hotel operators to produce guest records to police or face a criminal misdemeanor punishable by six (6) months in jail or a $1,000 fine. *Patel*, 135 S. Ct. at 2448.

The ordinance required the hotel to keep track of the guest's name, address, number of people in each guest's party, the make, model, and license plate number of any guest's vehicle parked on hotel property, the guest's dates of arrival and departure, room number, rate charged, the amount collected for the room, and the method of payment. *Id.* The Supreme Court held that the ordinance was unconstitutional because it failed to provide an opportunity for precompliance review, and that a hotel operator must "be afforded an *opportunity* to have a neutral decisionmaker review an officer's demand to search the registry before he or she faces penalties for failing to comply . . . [and] that [a]ctual review need only occur in those rare instances where a hotel operator objects to turning over the registry." *Id.*

Next, plaintiffs rely on *Weisenberg v. Town Bd. Of Shelter Island*, 404 F. Supp. 3d 720 (E.D.N.Y. 2019), which struck a portion of a vacation rental ordinance that required owners to produce similar types of registries for examination by local officials upon request. *Id.* at 735. The court noted that failure to comply with these requests would result in automatic fines and potential revocation of their licenses to rent vacation homes. *Id.* The court ultimately held that "[b]y failing to provide an opportunity for pre-compliance review before the imposition of fines, the Law may violate the Fourth Amendment." *Id.* at 736.

Here, the ordinances require the City to provide notice and an opportunity for hearing prior to the imposition of fines or penalties. Specifically, the relevant provision of the City Code states that "Any violation of this Article is prohibited, and shall subject the Owner, Operator, or Platform to penalties as provided in Sec. 26-629 . . . [and] **[n]otice and hearing requirements for determining violation(s) shall be in accordance with the administrative procedures provided in Chapter 6, Article III of the Code of the City of New Orleans.**" Rec. Doc. 48-4 at 24, Sec. 26-626 (emphasis added). Further, the ordinances provide opportunity for review before a hearing officer prior to assessment or imposition of any penalties. *See* Sec. 6-36.[10] Accordingly, the ordinances do not fall outside the confines of the Fourth Amendment and are constitutional.

However, there is one exception to the City's requirement that a pre-deprivation hearing take place prior to the revocation of a permit. Sec. 26-627 of the ordinance reads:

> If the Department has good cause to believe that the use of a Dwelling Unit as a[n] [STR] presents an imminent threat to public health, safety, or welfare, the Director of the Department, by issuance of a written order stating the reasons for such belief, may immediately suspend the [STR] Owner permit with respect to the Unit without a hearing.

---

[10] "Whenever the city agency having enforcement responsibility determines that a Code violation exists, a notice of violation(s) shall be provided to the owner(s)." Municode, https://library.municode.com/la/new_orleans/codes/code_of_ordinances?nodeId=PTIICO_CH6ADPR.

*Delahoussaye v. Seale* supports a prehearing deprivation can meet the standards for procedural due process when "the necessity of quick action by the state in order to safeguard important governmental or public interests can justify prehearing deprivations." 788 F.2d 1091, 1095 (5th Cir. 1986). In *Delahoussaye*, the Fifth Circuit upheld the suspension of a grain warehouse license that took place without a hearing prior to deprivation, because the provision provided for a "prompt postdeprivation hearing" within ten days, and a need to act quickly in emergency situations existed. *Id*. at 1095–96.

Here, the provision allowing for deprivation of an STR permit further provides that "within 14 days of the written order of suspension, a [STR] Owner may request a hearing in writing, directed to the Director of the Department. The hearing shall take place within 7 business days of the written request . . . [and] [i]f the owner fails to timely request such a hearing, the [STR] Owner's Permit shall be deemed revoked." Rec. Doc. 48-4 at 25, Sec. 26-627(c). As in *Delahoussaye*, the ordinance here provides sufficient post-deprivation procedures that guard against due process violations stemming from revocation of a permit without a hearing.

Further, the ordinances do not authorize nonconsensual warrantless searches of property. Sec. 26-624(3) requires city officials to present credentials to the owner, operator, or guest

14

and request entry with consent. Rec. Doc. 48-4 at 22. Further, Sec. 26-624(4) states that if consent is not obtained, and the owner or operator of the STR refuses within 72 hours of the Department's request, the Director or a representative may present an affidavit to a municipal court stating his cause to believe that an inspection of the designated premises needed and obtain a judicial warrant. *Id*. at 23. Clearly, the ordinances do not authorize non-consensual warrantless searches of the property.

Finally, plaintiffs fail to persuasively show that the City's Department of Safety and Permits, as well as its hearing officers, have any potential conflicts of interest that would violate due process. The Supreme Court in *Withrow v. Larkin* has noted that "the contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication" has a very difficult and high burden of persuasion to carry. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The Court further held that a claimant must "overcome a presumption of honesty and integrity in those serving as adjudicators; and . . . must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id*. Further, arrangements where an

15

adjudicator has a financial interest and incentive to find violations are prohibited. *See Cain v. White*, 937 F.3d 446, 453-54 (5th Cir. 2019).

Here, defendant has shown the fines assessed by a hearing officer of the Department are redirected into the City's general fund. Further, defendant shows that the Department does not keep the funds and its annual budget is not tied to the number of fines it collects. Plaintiffs' assertion that there will be collusion amongst the Department and its hearing officers is a serious contention that is unsupported by any evidence.

Accordingly, the ordinances do not establish any violation of the Fourth Amendment to the United States Constitution, and further, do not represent any issues pertaining to Due Process violations.

### d. Eighth Amendment

The Excessive Fines Clause of the Eighth Amendment prohibits the imposition of excessive fines by the government. U.S. Const. VIII. Recently, the United States Supreme Court incorporated the Excessive Fines Clause against the states through the Due Process Clause of the Fourteenth Amendment. *Timbs v. Indiana*, --- U.S. ----, 139 S. Ct. 682, 686-87, 203 L.Ed.2d 11 (2019). "[W]hen a Bill of Rights protection is incorporated, the protection applies 'identically to both the Federal Government and the States.'" *Id.*

16

at 689-90 (quoting *McDonald v. Chicago*, 561 U.S. 742, 766 n.14 (2010)).

The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). The applicability of the Excessive Fines Clause does not depend on whether the fine is civil or criminal in nature, but "whether it is punishment." *Id.* at 610. If a civil sanction "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes," it is a punishment. *Id.* (quoting *United States v. Halper*, 490 U.S. 435, 448, (1989)). In the excessive-fines context, a fine may constitute punishment when, for example, it does not serve a remedial purpose such as replacing revenue lost by the government. *United States v. Bajakajian*, 524 U.S. 321, 342 (1998).

As the Supreme Court has explained, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334. "If the amount of [fine] is grossly disproportional to the gravity of the [] offense, it is unconstitutional." *Id.* at 337. The Fifth Circuit has found that

"[a]n administrative agency's fine does not violate the Eighth Amendment—no matter how excessive the fine may appear—if it does not exceed the limits prescribed by the statute authorizing it." *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 234 (5th Cir. 2016) (citing *Newell Recycling Co. v. E.P.A.*, 231 F.3d 204, 210 (5th Cir. 2000)).

Plaintiffs contend that the fines imposed by violation of the ordinances are excessive, unlimited, and violative of the Eight Amendment. Plaintiff poses hypothetical situations describing the possible ramifications of the penalties. For example, plaintiffs describe a situation where: "a resident who simply doesn't *like* that their neighbor shares their home via home sharing platforms could lodge multiple complaints of violations . . ." against STR owners. Rec. Doc. 35 at 11. In another example, plaintiffs muse that the provision authorizes the City to "discontinue electric service to a home without regard to whether there are infants, elderly, or residents with special needs living there . . ." *Id*. Defendant contends that the ordinances are proper under the Eight Amendment.

Sec. 26-629(a) of the ordinances outlines the penalties and fines that may be assessed for violations of the ordinances. City Code Sec. 26-629 provides:

> Any person who violates this Article or the Comprehensive Zoning Ordinance shall be subject to a

fine of not less than $500.00 for each offense. Each day that such violation exists shall constitute a separate and distinct offense. Multiple violations can occur during a single guest stay, and may be noticed and heard in a single administrative Hearing

In addition to any fine or penalty imposed by this Article, the City may seek all available relief in a court of competent jurisdiction to enjoin any violations

The City may seek any remedy to compel compliance with the requirements of this Article or any correlating provision in the Comprehensive Zoning Ordinance, including the discontinuance of electrical service and the filing of property liens.

The City may revoke or suspend any and all permits required by this Article, as provided herein. If a permit issued pursuant to this Article is revoked, such revocation shall remain in effect for a period of one year from the date of revocation. The duration of suspension shall be dictated by the hearing officer's order.

Sec. 26-629(a)-(d). Further, the fine of $500.00 per violation is provided for by law. Sec. 6-37 provides, "The penalty for each violation shall not exceed the maximum monetary amount that may be imposed by municipal court as provided in [La.] R.S. 12:2500."[11] Further, imposing property liens to enforce municipal fines is also explicitly provided for under state law. *See* La. Stat. Ann. § 13:2575. Also, defendant's contention that disconnecting the electrical service allows the City an opportunity to impose

---

[11] La. Stat. Ann. § 13:2500 C.(1)("The penalty which may be imposed for each violation of a municipal ordinance shall not exceed *five hundred dollars* or six months in jail, or both at the discretion of the court, and in default of the payment of the fine said violator may be sentenced to serve a period in jail for a term not to exceed an additional thirty days.")(emphasis added).

meaningful penalties on STR owner who take the fines assessed as a mere cost of doing business is persuasive.

The STR ordinances allowing the imposition of fines were made in conjunction with state law, are proportional, and are facially constitutional. Plaintiff's speculative arguments that the disabled and elderly will be burdened by this are unavailing and unpersuasive. Accordingly, the penalty provisions of the ordinance do not run afoul of the Eight Amendment prohibiting excessive fines.

Plaintiff also argues that the penalty provisions are unconstitutionally vague. This argument is likewise unpersuasive. The Fifth Circuit has held that the appropriate standard for whether a law is unconstitutionally vague hinges on whether the law is civil or criminal in nature. *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 507 (5th Cir. 2001). In *Ford Motor Co.*, the Fifth Circuit stated that "a less stringent standard is applied to civil statutes that regulate economic activity." *Id.* In determining whether the civil statute is vague, courts in the Fifth Circuit will invalidate a statute if "'it commands compliance in terms 'so vague and indefinite as to really be no rule or standard at all' . . . 'or if it is substantially incomprehensible.''" *Id.* (citing *United States v. Clinical Leasing Service, Inc.*, 925 F.2d 120, 122 n. 2 (5th Cir. 1991)). Further, the Supreme Court has noted that, "[i]t is a basic principle of due process that an

enactment is void for vagueness if its *prohibitions* are not clearly defined." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, (1982)(emphasis in original)(internal quotations omitted). In that same case, the Court held that "[t]he Federal Constitution does not preclude a city from giving vague or ambiguous directions to officials who are authorized to make investigations and recommendations. There would be no constitutional objection to an ordinance that merely required an administrative official to review 'all relevant information' or 'to make such investigation as he deems appropriate' before formulating a recommendation." *Id.* at 291.

Here, the challenged ordinances are in no means substantially incomprehensible. Plaintiffs allege that the ordinances leave discretion to grant an STR permit, or to revoke said permit and impose a fine on an STR permit holder, to "unspecified officials according to no standards whatsoever . . ." Rec. Doc. 35 at 12. Plaintiffs cite Sec. 26-624(a) to support their contention, which provides: "[t]he department shall receive and process all [STR] permit applications and determine applicant eligibility; (b) the department shall issue permits only to eligible applicants, as determined by the department." *Id.* at 12. However, Sec. 26-617 lists with specificity the requirements for obtaining an STR permit, and Sec. 26-624(a)-(b) gives City officials the authority to make such determinations, and all permit denials are subject to

appeal to the BZA or a hearing officer and further judicial review before a state district court. Rec. Doc. 48 at 21. Because the ordinances delineate what is required for permit issuance and eligibility, Sec. 26-617 is not unconstitutionally vague for vesting City Officials with the authority to determine eligibility of permit applicants under City Code Sec. 26-624.

Sec. 26-617 provides the requirements for eligibility to receive an STR Permit. This section outlines the requirements for the application to receive a permit, and includes the requirement that an application have an attestation by the Owner that:

> i. the Dwelling Unit has not outstanding property taxes or City Liens associated with the lot of record, nor does the owner owe any other outstanding taxes to the City, including taxes and fees owed in connection with the [STR]s;
>
> ii. The Dwelling Unit complies, and will comply during any [STR] of the Dwelling Unit, with all standards contained in the City's Minimum Property Maintenance Code and all health safety requirements contained in the Building Code;
>
> iii. The Dwelling Unit has working smoke detectors inside and outside every bedroom, carbon monoxide alarms outside every bedroom, and a properly maintained and charged fire extinguisher on all habitable floors;
>
> iv. The Dwelling Unit is not subject to any contractual restrictions precluding the Dwelling Unit from being used for [STR]s, including but not limited to: homeowner association agreements, condominium bylaws, restrictive covenants, or building restrictions; and
>
> v. the Owner has read, understands, and agrees to comply with all legal duties imposed by this Article and the Comprehensive Zoning Ordinance.

- The Owner possesses insurance that meets
  the requirements of Sec. 26-618(A)(1).

- For all Residential permits, the Dwelling
  Unit used as a [STR] is located on the same
  lot of record as the owner's primary
  residence, as the homeowner possesses a
  valid Homestead Exemption at that property.

vi. The Owner will not discriminate in guest use or
rental of a [STR], and will comply with all applicable
anti-discrimination laws, including but not limited to:
Title VII of the Civil Rights Act of 1968, the Fair
Housing Act (FHA), and the Americans with Disabilities
Act (ADA).

Rec. Doc. 48-4 at 9. Because the ordinances clearly outline what

is required in an application for permit eligibility, and

delineates the requirements for obtaining approval, the ordinance

is not unconstitutionally vague. As in *Alladin's Castle*, defendant

city may provide its officials with the discretion to apply the

clearly set out requirements in the Sec. 26-617 City Code. See

also 26-624; *Alladin's Castle*, 455 U.S. at 291. Further still, if

a potential applicant's request for an STR permit is denied, said

denial is subject to appeal to the BZA and further judicial review

before the state court, satisfying any due process concerns. *See*

City Code Sec. 26-624. Accordingly, defendant City is entitled to

a judgment as a matter of law that the challenged city ordinances

are not unconstitutionally vague.

### e. **First Amendment**

Plaintiffs contend that the revised ordinances violate their

First Amendment rights to free association and assembly, by

prohibiting more than two persons from sharing a bedroom, thereby "criminalizing . . . a couple who allow their infant or child to sleep in the bedroom with them." Rec. Doc. 35-2 at 12. Plaintiffs further contend that the ordinances criminalize this behavior without regard for the size of the room, its furnishings, or the specifications for sleeping rooms in the International Building Code adopted by the City of New Orleans. *Id*. Defendant contends the ordinances do not violate the First Amendment's guarantees to free assembly and association, and that plaintiffs' claims are merely speculative. This Court agrees.

Freedom of association has a foundation in freedom of speech. *See Thorne v. Jones*, 765 F.2d 1270, 1273 (5th Cir. 1985). The freedom of association "has always meant the right to associate ideologically: for advancement of beliefs and ideas." *Id*. (quoting *White v. Keller*, 438 F. Supp. 110, 115 n. 7 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978)). "The right is protected because it promotes and may well be essential to the effective advocacy of both public and private points of view, particularly controversial ones that the First Amendment is designed to foster." *Id*. (internal quotation and citation omitted). In the context of prison visitations, the Fifth Circuit in *Thorne* further noted:

> [T]he first amendment expressly protects the freedom of assembly, which is patently a right to associate physically. But this freedom must be read in context; it is not simply a right to associate physically; it is a right to associate physically for the purpose of

24

> expressing ideas. And it is not a right merely to be
> together, [sic] it is a right to assemble; it connotes
> a gathering, not a visitation. While the argument could
> be made that it includes all physical associations,
> since no doubt meaningful, protected ideas might be
> exchanged on any such occasion, the court is doubtful
> that the rights of association and assembly are so broad.
> The history, nature and purpose of the first amendment
> do not warrant this conclusion. Although the amendment
> protects all ideas, its essence is political.

*Id.* at 1274 (quoting *White v. Keller*, 438 F. Supp. 110, 115 n. 7 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978)).

Here, the challenged ordinance merely prevents STR owners from skirting those ordinances by claiming that a bedroom in fact sleeps more than the recommended amount of people, among other things. The First Amendment, while certainly protective of the right to congregate and exchange political ideologies and ideas, in all likelihood does not extend to something as speculative, and in this context trivial, as ordinances noting specific requirements for the number of persons legally allowed to sleep in the bedroom of an STR. Accordingly, this case presents no unreasonable or irrational regulations preventing association of assembly based on conceivable rational basis for same.

Further, the STR ordinances do not prohibit non-commercial social events of the type plaintiffs describe. Section 26-620(B)(8), states that STRs are only prohibited from being operated as commercial reception facilities. Specifically, Section 26-620 provides in pertinent part:

Prohibited Acts. The following acts shall be prohibited and may be grounds for suspension or revocation of a[n] [STR] Permit . . . 6) Exceeding the Guest Bedroom limitation set forth in the Comprehensive Zoning Ordinance. 7) Exceeding the Guest occupancy limitations set for in the Comprehensive Zoning Ordinance. 8) No Dwelling Unit associated with a [STR] Owner Permit may be used as a reception facility, or any other commercial use defined by the Comprehensive Zoning Ordinance. No Special even permit shall be obtained for an event occurring at a Dwelling Unit during any period of Guest occupancy.

Rec. Doc. 48-4 at 18, Sec. 26-620(B)(6-8). Thus, plaintiffs' contentions remain unpersuasive.

Finally, the citation to the Texas Appellate Court case, *Zaatari v. City of Austin*, No. 03-17-00812-CV, 2019 WL 6336186, (Tex. App. Nov. 27), which analyzed STR ordinances in light of the *Texas Constitution,* is inapplicable in the present context.[12]

**f. Dormant Commerce Clause**

The Constitution gives Congress the authority to regulate commerce. U.S. CONST., art. I, § 8, cl. 3. The Dormant Commerce

---

[12] "Possibly accounting for the lack of assembly-clause cases in Texas, the Texas Supreme Court has adopted the judicially created right of association as a right that is instrumental to the First Amendment's free speech, assembly, and petition guarantees. But, in contrast to the U.S. Supreme Court, the Texas Supreme Court has never limited the application of Texas's assembly clause to situations where the purpose of the assembly was to petition the government for a redress of grievances. Nor has the Texas Supreme Court expressly held, or even considered whether, the judicially created right of association has subsumed the text of Texas's assembly clause, as some commentators have indicated has occurred with the federal assembly clause. *We therefore rely on the plain text of the Texas Constitution* to conclude that its assembly clause is not limited to protecting only petition-related assemblies and the judicially created right of association does not subsume the Texas Constitution's assembly clause in its entirety. *Zaatari v. City of Austin*, No. 03-17-00812-CV, 2019 WL 6336186, at *13 (Tex. App. Nov. 27, 2019)(emphasis added)(internal citations and quotations omitted).

Clause doctrine arises from the inversion of this principle, in other words, "th[e] negative aspect of Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992) (internal quotations and citations omitted). The Supreme Court further explained, "when a state statute clearly discriminates against interstate commerce, it will be struck down . . . unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Wyoming*, 502 U.S. at 454. In this context discrimination is defined as "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). Further, "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970).

Here, it appears that the ordinances do discriminate against out-of-state owners of STR properties, albeit incidentally. Sec. 26-617(6)(v) provides: "For all residential permits, the dwelling unit used as a [STR] is located on the same lot of record as the *owner's primary residence*, and the owner possesses a valid

27

Homestead Exemption at that property."(emphasis added). Further, Sec. 26-614 defines Primary Residence throughout the article as "*the Owner's* bona fide principal home, as indicated by the possession of a valid homestead exemption authorized by the Orleans Parish Assessor's Office." (emphasis added). Defendant contends that the STR Ordinances do not impermissibly discriminate against nonresidents because "the distinction drawn by the STR Ordinances is not between whether the property owner is local or out-of-state; the relevant distinction is whether the property *itself* is an owner-occupied home or a non-owner-occupied rental property, regardless of whether its owner lives in Orleans Parish. Rec. Doc. 48 at 24 (emphasis in original). This contention is not correct, and the statute effectively discriminates against out-of-state owners of STR and in state owners of STR, as a person living within the state is more likely to have a homestead exemption within the state than a person residing in another state entirely. However, as stated previously, where "the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142.

Here, the incidental effect on interstate commerce is one that was unintended, and "not clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. Defendant cites

the 2018 Short Term Rental Study, which noted that whole home rentals "led to quality of life issues, such as noise [and] loss of neighborhood character . . . These negative impacts are exacerbated in residential areas, where most of the temporary licenses are located." Short Term Rental Study, Exhibit 4 at 7. Further, the City Council spoke at length about protecting neighborhoods and ensuring accountability by requiring homestead exemptions for temporary STR permits, thus demonstrating that the ordinance was subject to a legitimate local public interest and not protectionism for Louisiana residents. Rec. Doc. 48 at 24-25.[13] Plaintiffs provide no opposition to defendant's contentions in their response to the defendant's motion for summary judgment, and do not address the Dormant Commerce Clause in their motion for partial summary judgment. As noted earlier, the ordinance affects interstate commerce, but only incidentally, and is subject to a legitimate public interest. Accordingly, defendant is entitled to a judgment as a matter of law with respect to whether the ordinances run afoul of the dormant Commerce Clause.

---

[13] Defendant also cites *Rosenblatt v. City of Santa Monica*, 940 F.3d 439 (9th Cir. 2019) in support of their argument that the ordinance at issue does not run afoul of the dormant Commerce Clause. However, that case is misplaced and distinguishable form the present facts. In *Rosenblatt*, the court noted that the owner of the STR unit need not be the primary resident, and cited the quoted the ordinance in question in support. *Rosenblatt*, 940 F.3d at 450 ("'[A]t least one of the dwelling unit's primary residents lives on-site, in the dwelling unit, throughout the visitors' stay.' Santa Monica Mun. Code § 6.20.010(a)"). Here, the ordinance at issue clearly contemplates that the owner of the unit must be the primary resident of the STR, thus differing from the *Rosenblatt* case. *See* Sec. 26-614, 26-617(6)(v).

New Orleans, Louisiana this 6th day of August, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE