## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SAMANTHA HIGNELL-STARK**        **CIVIL ACTION NO. 19-cv-13773**
**WHITE SPIDER RENTAL**
**CONCIERGE, LLC.,**
**RUSSELL FRANK,**
**SAMANTHA and BOB MCRANEY,**        **JUDGE: IVAN L. R. LEMELLE**
**and JIMMIE TAYLOR**
        Plaintiffs        **MAGISTRATE: Janice Van Meerveld**

        **VERSUS**

**THE CITY OF NEW ORLEANS**
        Defendant

### PLAINTIFF'S OPPOSITION
### TO MOTION FOR SUMMARY JUDGMENT BY
### DEFENDANT, CITY OF NEW ORLEANS

**MAY IT PLEASE THE COURT:**

Defendant, the City of New Orleans, seeks summary judgment for the unsupported and sometimes perplexing reasons discussed below.  Plaintiffs respectfully suggest that the City's motion (Rec. Doc. 169, refiled Rec. Doc. 172), be denied.

We respond to the City's arguments in the order they appear in the City's Memorandum in Support (Rec. Doc. 169-1) for ease of reference, using the document sections that the City uses. The City argues as follows.

**Preamble**

The City's Preamble admits that there are no material facts in dispute.[1] But the City incorrectly states that Plaintiffs bring only facial challenges to the statute. Because the statute has

---

[1]Rec. Doc 169-1, p. 2.

taken effect, against Plaintiffs' interests, Plaintiffs bring both facial and as-applied challenges to the City's STR ordinances numbered 29,318 M.C.S. and 29, 382 M.C.S. The Supreme Court explains that the distinction between the two goes to the remedy employed by the Court, not what must be pleaded in a complaint[2]. Here, Plaintiffs seek to enjoin enforcement of the statute both in particular provisions and in its entirety,[3] which comprises remedies appropriate for both as-applied and facial challenges. We do not rely on hypotheticals, but on the plain language of the City's ordinances.

## I.      Factual Background

### A.  Legislative Process

The City notes a previous, apparently never-challenged ordinance prohibiting renting a dwelling for less than thirty days, or sixty day in the French Quarter.[4] Plaintiffs deny that this was ever lawful under Louisiana's enabling statute or under federal police power jurisprudence.[5] Nothing authorizes the City to regulate *the duration* of residential leasing of residentially zoned private property for residential use.

The City says that the Council directed the CPC to reevaluate the City's STR law in 2018 because of the proliferation of the industry . . . . [6] But what actually happened was, a new City Council was elected, and the hotel industry had launched a global lobbying effort, targeting

---

[2]*Citizens United v. Fed. Election Comm'n,* 130 S. Ct. 876, 175 L. Ed. 2d 753, 558 U.S. 310, 331(2010)

[3]Plaintiffs' Motion for Summary Judgment and Memorandum in Support, Rec. Docs. 170, 170-1.

[4]Rec. Doc. 169-1, p.2.

[5]La. R.S. 33:4721.

[6]Rec. Doc. 169-1, p.2-3.

municipalities. to hamstring the burgeoning popularity of home sharing via websites like Airbnb,[7] Whether the Council accepted their contributions, or those of the commercial STR industry that these ordinances favor, we do not know–but we need not sweep out those dark corners, because the ordinances we challenge are so broadly unconstitutional that nothing else matters.

The parts of the 2018 CPC study that the City highlights comprise entirely anecdotal evidence, and even so, do not show that STRs have "proliferated" to any extent. The 2018 Study shows only 2.17% of total housing units in New Orleans being used as STRs.[8] The Study further states that there is no conclusive evidence that STRs are the cause of housing unaffordability in New Orleans.[9] The study correctly notes that broader market factors affect the availability of affordable housing. The Fifth Circuit cited this finding in its *Hignell-Stark* decision.[10] Notably, the 2018 CPC study recommends that all neighborhoods be treated equally with respect to STR permitting.[11] That is not done in the current ordinances, which irrationally prohibit STRs in the the most expensive neighborhoods in New Orleans, while allowing them in areas such as Central City where affordable housing actually does exist. [12]

---

[7]Rec. Docs. 6-6, 6-7.

[8]2018 CPC Study, Rec. Doc. 48-6, p.4.

[9]*Id*. at p.9.

[10]*Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 329 (5th Cir. 2022).

[11]2018 CPC Study, Rec. Doc. 48-6, p. 11.

[12]Real Estate analyst Zillow reports the average home price in the Garden District is $583,000 (https://www.zillow.com/home-values/151754/garden-district-new-orleans-la/, last visited July 28, 2023); and in the French Quarter it is $401, 600 (https://www.zillow.com/home-values/269703/french-quarter-new-orleans-la/, last visited July 28, 2023).

The 2018 CPC Study further notes that a study conducted by the University of New Orleans School of Hospitality in 2017 showed that 70% of STR visitors arrive by airplane, which does not support a conclusion that STRs affect the availability of parking in neighborhoods. The same study found that approximately 600,000 visitors stayed in STRs, contributing an estimated $899 million to the local economy, generating an estimated $63.9 million in taxes for state and local governments.[13] A November, 2017 news article reports that Airbnb alone paid $3 million in new tax revenue to the City since it began permitting STRs in April of that year.[14]

The City next refers to a CPC Study undertaken in 2022 after the Fifth Circuit's *Hignell-Stark* decision. The City claims that the current amendments were enacted after the Council and the CPC "thoroughly studied a range of concerns."[15] But apparently, those concerns were entirely internal to the Council and CPC: the 2023 CPC Study refers to three *earlier* studies, done in 2015, 2018 and 2019 (which was limited to using STRs to incentivize economic activity),[16]but mentions no new studies or relevant data gathered. Instead, the 2023 CPC Study says

> "Staff considered caps based on neighborhood, census tract, or percentage of livable units in any geographical area, but discovered that the data required to establish these types of mechanisms does not yet exist. Collecting and maintaining the data to support these types of caps would take staff time and resources and may be difficult to manage on an ongoing basis."[17]

---

[13]2018 CPC Study, Rec. Doc. 48-6, pp. 79-80.

[14]https://www.nola.com/news/politics/airbnb-says-its-generated-3-million-in-tax-revenue-since-new-orleans-made-short-term/article_78c84f40-739a-5244-9fec-3a1b499c24e4.html, last visited July 26 2023.

[15]Rec. Doc. 169-1, p.5.

[16]2023 CPC study, p. 21, Attached hereto as Exhibit 1.

[17]*Id*, pp. 29-30.

The 2023 CPC Study doesn't reflect 'thorough study' at all. It reflects meetings and conversations that happened between the CPC and the City Council, and public hearings at which STR opponents and proponents equally said their piece. In its important *Cleburn* decision, the Supreme Court squarely rejected the city's argument, that the concerns of neighbors justified zoning restrictions. The Court unambiguously held that mere negative attitudes or fears, unsubstantiated by factors properly cogizable in a zoning proceeding, are not permissible bases for treating a home differently, as the STR ordinances do.[18]

The 2023 CPC Study also acknowledges that STRs benefit neighborhoods by promoting renovation and maintenance of old housing stock, and that STRs bring additional revenue to local businesses and the City, and help homeowners maintain home ownership. This record proves that, by the attestation of plaintiff, Kurt Klebe and its exhibits.[19]

The 2023 Study also confirms that STRs are a residential use–guests use them for traditional residential uses such as relaxing, bathing, sleeping, cooking, gathering with friends, watching TV.[20] The vast majority of courts agree.[21]

In sum, contrary to the City's rosy picture of a thorough study preceding the current STR ordinances, the record shows that the ordinances are merely the unconstitutional product of conferences and conversations among the CPC and a Council hostile to STRs,  along with public

---

[18]*City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 448, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)

[19]2023 CPC Study, Exh. 1, p.28.

[20]*Id.*, at 28.

[21]*Hawai'i Legal Short Term Rental All. v. City & Cnty of Honolulu*, No. 22-cv-DKW-RT, 2022 U.S. Dist. LEXIS 187189 (D. Hawaii, Oct. 13, 2022), cataloguing 19 cases across the country holding that short term rentals are a residential use, and only 5 to the contrary.

hearings that were equally divided among proponents and opponents of STRs. These are not the proper bases for zoning decisions, under *Cleburn*, even if the City were authorized to zone *the duration* of leasing of residential private property for residential purposes in a residential zone–which Plaintiffs deny.

The City quotes the statement of purpose that precedes Code Ordinance 29,381 M.C.S. but nowhere in its Memorandum does the City show that the ordinance, or CZO 29,382 M.C.S. actually *further* those purposes. That is why the ordinances fail Equal Protection and substantive Due Process analysis, discussed further below.

### B. Procedural Due Process

### 1. Code Ordinance Provides No Time Limit To Issue or Deny STR Permit

Code ordinance 29,381 M.C.S. provides that a homeowner must have a City permit to lease their home for less than 30 consecutive days, and prohibits advertising the home without the permit.[22] But the ordinance provides that the City shall determine eligibility for the permit, with no time limit within which to do so, and none within which the permit must be issued, or denied.[23] That is a First Amendment violation.

The City argues that denial of a permit can be appealed, but there is no effective appeal from a decision that does not issue–except perhaps the extraordinary remedy of a mandamus. But an extraordinary remedy does not equal procedural due process. In a First Amendment context, the Supreme Court held that the right to prompt judicial review includes the right to a timely

---

[22]29,381 M.C.S. Sec. 26-615(a)(1); Sec. 26-618(b)(1).

[23]*Id.*, Sec. 26-624(a); 26-624(e).

decision.[24] The same goes for a permit that issues at the discretion of a City Department.

The City argues that only a hearing officer can revoke a permit.[25] But Sec. 26-624(d) provides that the Department can cancel and rescind a permit whenever the Department in its sole, standard-less discretion determines that the permit contravenes the Code or CZO. The ordinances contain no description of what might justify immediate cancellation of a permit, unlike other statutes and ordinances with specific provisions that have been upheld.[26] The STR ordinances therefore leave the door open for potential cancellation of permits for indefinite periods of time without notice or hearing, and therefore, for potential harassment of homeowners, and their guests.

The City argues that any qualified applicant can obtain a permit, but that is simply not so. The ordinances only allow one permit per square block, and none if a Bed and Breakfast (B&B) happens to be there already. *Unless* the City Council grants an exception, at its sole discretion.[27]

### 2. The Code's Self-Enforcement Provisions Violate Due Process

The self-help enforcement provisions of the ordinance are unprecedented and simply irresponsible. Given citizens' strong feelings about the emerging growth of the sharing economy–which are not properly cognizable in a zoning proceeding[28]–the STR ordinance is certain to encourage ill-will, unsupported complaints, and meritless litigation among neighbors.

---

[24]*Fw Pbs, Inc Ii v. City of Dallas Inc v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

[25]Doc. 169-1, p.6, p. 22.

[26]*Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)

[27]29,382 M.C.S. Sec. 21.8.C.18(q), (r).

[28]*Cleburn, supra*, at 448.

It lacks due process protections, as well.

The ordinance provides that complaints–unverified, unsubstantiated, and un-investigated by the City–must be resolved within one hour.[29] The Declaration of Kurt Klebe, and its exhibit 4, show that, upon receiving a complaint, without verification and without investigation the City sends out text messages to homeowners, in the middle of the night, demanding that the unverified complaint be remedied pursuant to the ordinance.[30] Such a demand, pursuant to the requirements of such an ordinance, does not comport with the requirements of due process. But it does highlight the Council's push to hobble the residential home sharing economy.

The STR ordinance also provides a private right of action granting anyone the right to bring an action to obtain a preliminary injunction against an STR owner or operator without a showing of irreparable harm, and to obtain attorney's fees if successful in doing so.[31] There is no corresponding remedy for unsuccessful actions or recovery of attorneys fees spent defending them. That sort of state action is precisely what the Fourteenth Amendment was enacted to prohibit.

Sec. 26-628(f) also provides that if an owner or operator permit is revoked, a hearing officer shall order that the property may not be operated as an STR for five years, and that fact shall be recorded as a charge against the property effective against third parties. So third party purchasers, or persons who may inherit the property, who have done no wrong and had no due process whatsoever, are penalized. That is improper, and unconstitutional.

## II.    Legal Standards

---

[29]29,381 M.C.S. Sec. 26-618(a)(10)(a)(ii, iii, iv).

[30]Declaration of Kurt Klebe, Rec. Doc. 173, Exh 4

[31]29,381 M.C.S. 26-630.

### A.  Summary Judgment

The City admits that the facts in this case are not in dispute.[32] Plaintiffs agree. But we do not agree that the City is entitled to summary judgment. To the contrary, it is Plaintiffs who are entitled to summary judgment on this record.

### B.  Plaintiffs Allege Facial and As-Applied Challenges to the STR Ordinances

As noted above, the type of challenge faced by the Court goes to the breadth of the remedy, not what is or must be pleaded in the Complaint.[33] In *Citizens United*, the Court explained that the distinction between the two is not so well-defined that it has some automatic effect. Relying on the Fifth Circuit's *Catholic Leadership Coal. v. Reisman* decision, the City argues that Plaintiffs here bring a facial challenge to the ordinances. That's fine with us: *Reisman* held the parts of the statute that really mattered there facially unconstitutional.

We ask the Court to hold the ordinances at issue here unconstitutional in their entirety because the City lacks the authority to regulate the duration of residential leases of residential private property under Louisiana's enabling statute and federal jurisprudence.[34] That is, there is no set of circumstances in which the City's STR ordinances are valid *and* the ordinances have no legitimate sweep. In addition, we ask the Court to declare unconstitutional particular provisions of the ordinances, as they apply to Plaintiffs and to  all, because they are both overbroad, and invalid under any set of circumstances–that too looks like a facial challenge to the ordinances.

The City cites *Washington State Grange v. Washington State Rep. Party*, arguing that the

---

[32]Rec. Doc. 169-1, p.7.

[33]*Citizens United*, *supra.*

[34]La. R.S. 33: 4721. We discuss this in our Memorandum in Support of Plaintiffs' pending Motion for Summary Judgment, Rec. Doc. 170-1, p.2.

court should not go beyond a statute's facial requirements or speculate about imaginary hypotheticals. There is no need to do so here: unlike the election primary at issue in *Washington*, the City's STR ordinances have already taken effect, and have already affected the Plaintiffs and others.[35] That is why *Washington State Grange* is inapposite here.

The City cites the *Catholic Leadership* case mentioned above, including its reference to *United States v. Stevens*, and then cites *Stevens* itself. That is an important First Amendment case, whose holding does not favor the City. Justice Roberts explains: " The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits. The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. The *Stevens* case found the statute at issue there facially unconstitutional as overbroad, cataloguing numerous *hypothetical* situations in which the statute would impermissibly curtail free speech.

The City also *FM Props. Oper. Co. v. City of Austin*, a due process case which challenged Austin's zoning decision to reject a development plan. The case is inapposite because here, Plaintiffs do not seek any re-zoning. To the contrary, Plaintiffs want to use their residential property located in residential zones for exactly the purpose it is zoned for: residential leasing. While in *FM Props* the plaintiffs could not show that Austin's intention–to prevent building and development according to outdated plans–was irrational, the present record is replete with evidence of the City Council's discriminatory and irrational preferences in violation of Plaintiffs' fundamental constitutional rights.

---

[35] 29,381 M.C.S. , Rec. Doc. 155-3, p.37.

The *Shelton v. College Station* case cited by the City is inapposite for the same reason: plaintiffs there sough a zoning variance, while in this case, Plaintiffs seek to use their residences for the residential use they are zoned for. It is the City which seeks to deny that right to some but not other residents in the same zone. That's a different circumstance, and a different problem. The City quotes language from *Shelton* holding that "in the absence of . . . infringement of fundamental interests," but that is precisely what sets this case apart: Plaintiffs *do* allege infringement of fundamental property and First Amendment rights.

### C. Local Land Use Ordinances Should Be Presumed Valid If They Have A Rational Relationship To A Legitimate Government Interest *And* Further That Interest

The City misstates the relevant legal standard and inquiry: governments may have rational reasons for "enacting" legislation, as the City's title claims, but the City must show that its enactments are rationally related to a legitimate government interest *and* that they further that interest.[36] The City cannot do so. Whatever the Council's reasons for enacting the STR ordinances–which don't seem legitimate at all–the City cannot show that the ordinances are rationally related to their statement of purpose or that they further any legitimate government interest. The record shows exactly the contrary.

### III. The City Cannot Show It Is Entitled To Judgment As A Matter of Law

#### A. The Residency Requirement for Operators Violates the Dormant Commerce Clause

What we have here is a fundamental misunderstanding of the dormant Commerce Clause, and the Fifth Circuit's *Hignell-Stark* decision, together with a misstatement of what the City's ordinance requires of operators. The City states that a residency requirement for STR owners violates the Commerce Clause but a residency requirement for operators does not. Apparently,

---

[36]*Mikeska v. City of Galveston*, 451 F.3d 376, 380 (5th Cir. 2006)

the City invented this distinction from whole cloth, because no law supports it, and certainly not the Fifth Circuit's.

Moreover, the City does not explain, nor cite any authority, for its contradictory statement that its ordinances do not require an NSTR operator to live in the dwelling. The ordinances require that a bedroom in the NSTR be reserved for the operator, and that the operator provide documents showing residence at that same address.[37] The other side of a shotgun double, or another apartment in an apartment building, would have a *different* address from the permitted NSTR. And an accessory building on the property–a travel trailer perhaps?–is not a permissible NSTR. The City simply misstates the requirements of its ordinances in its argument.

Separately, the City admits that its ordinances require an operator to live on the NSTR property to obtain an operator permit. The ordinances require operators of residential STRs (NSTRs)–but not commercial STRs, which are exactly the same commodity–to reside in a bedroom of the residential STR. Not sometimes, not only when a guest is there, but all of the time, evidenced by documents such as a driver's license, utility bills, credit card statements, all going to that same address. Failing to reside on the premises is specifically prohibited.[38]

To require an operator to live in the STR excludes all who do not, both out-of-state and locals, from the market for residential (NSTR) operators. It excludes corporate operators–an emerging market nationwide–which is a different problem. It *discriminates* against those who live out-of-state but want to participate in the residential STR market as operators . Which makes the ordinance virtually *per se* unconstitutional, says the Fifth Circuit.[39]

---

[37]29,381 M.C.S. 26-619(b)(2); 26-620(a)(1)(e); 26-620(b)(15).

[38]*Id.*, 26-620(b)(15).

[39]*Hignell-Stark v. City of New Orleans, supra*, at p.325.

The Fifth Circuit addressed precisely this type of residency requirement in *Hignell-Stark*, one that discriminated against locals as well as out-of-state residents. Discussing at length the Supreme Court's *Carbone* decision, the Fifth Circuit squarely held that discriminating against locals–as the City's previous STR ordinance did–doesn't save a residency requirement under the Commerce Clause. The Court explained: as the Supreme Court has repeatedly held, local ordinances that discriminate against interstate commerce are not valid simply because they also discriminate against intrastate commerce.

If a law discriminates in this way, it cannot be upheld if there are *any* alternative means to advance the government's legitimate purpose. This forecloses the City's reliance on its residency requirement for operators, because the City has a full roster of nuisance ordinances with which to remedy any that might be caused by STRs–the City need only enforce them, as the Fifth Circuit suggested. With respect to affordable housing, the City has not produced any cognizable evidence that STRs affect affordable housing. The record shows otherwise: the CPC's 2023 study says there were a total of 1,229 residential STR permits, while the recent census shows there are a total of 215, 091 housing units in New Orleans.[40] The STRs are a drop in that bucket.

The City cites the Ninth Circuit's *Rosenblatt* decision, but the Fifth Circuit *distinguished* that decision, nothing more. If *Rosenblatt* held that discriminating against locals along with out-of-state actors saves an ordinance from unconstitutionality, then that decision conflicts with the Fifth Circuit's *controlling* decision, as well as the Supreme Court's holding in *Carbone*.

The Fifth Circuit's suggestion in *Hignell-Stark*–merely that, only dicta, and not a ruling–that a possible alternative to the City's residency requirement would be to have an operator on premises *during an STR stay* doesn't help that City, because that's not what the City

---

[40]2023 CPC Study, p.22.

enacted. The ordinances at issue here require an operator to live on the premises of a residential STR. They discriminate against all out-of-state corporate entities as well, while not requiring the same of commercial STRs. The City's discrimination and Equal Protection violation there is clear.

### B. The City's Prohibitions Against Corporations, Trusts and Usufructuaries Violate the First Amendment and the Equal Protection and Due Process Clauses

#### 1. There Is No Regulatory Taking Claim At Issue, and The City Misunderstands the Import of the Fifth Circuit's Finding

The City begins this section with the baffling assertion that Plaintiffs attempt to relitigate a regulatory taking claim. But there is no such claim alleged in the operative Consolidated Complaint.[41] Nor do Plaintiffs seek to relitigate the First Amendment claim that we have already won. Exclusion of juridical persons from the STR market has nothing to do with regulatory taking. We're not talking about renewals here, and it is puzzling that the City thinks so; we're talking about initial permitting, and persons excluded from eligibility from the outset.

The City seems to misunderstand here the import of the Fifth Circuit's finding, that the STR ordinances grant the City unbridled discretion to deny STR permits.[42] The City argues that the City has complete discretion to deny a permit. Plaintiffs agree, and so does this Court, and the Fifth Circuit. But here's the catch: to require a permit to speak then exercise unbridled discretion to deny the permit comprises a First Amendment violation. That is well-settled. This court has already held so, citing settled Supreme Court precedent.[43] The Fifth Circuit's finding confirms that holding–and the City's First Amendment violation. Apparently, the City agrees.

---

[41]Rec. Doc.160.

[42]*Hignell-Stark*, *supra*, at 324.

[43]*Hignell v. City of New Orleans,* Rec. Doc. 74.

The City cites *Horizon Concepts*, and *Shelton*, but those cases are inapposite because they involved plaintiffs seeking special use or zoning variances. Here, Plaintiffs do not seek any special use or variance permit; they want to use their residences for the residential use for which they are zoned. The City cites a seminal zoning case, *Euclid v. Ambler Realty*, but that case again supports Plaintiffs claims, confirming the initial basic intent of zoning to confine industrial, business, and residential uses to their own zones and prevent dangerous construction leading to fires, and overcrowding contributing to the spread of contagion. In this case, again, Plaintiffs seek to use their residences, located in residential zones, for residential use.

The City's argument that its "natural persons" restrictions apply equally to all individuals is simply hogwash, given controlling jurisprudence that corporate persons are entitled to the same constitutional rights and protections as natural persons. The City fails to show that corporate persons, acting through their owners and employees, cannot contribute to the livability of neighborhoods in the same way as any other person. The City cites no law to support its "natural persons" argument because there is none.

### 2.  The City's Prohibitions Against Juridical Persons Violate the First Amendment

The advertising restrictions in the City's STR ordinances are plainly content-based, under *Reed*. "A regulation of speech is facially content-based under the First Amendment if it targets speech based on its communicative content–that is, if it applies to particular speech because of the topic discussed or the idea or message conveyed."  A content-based restriction is presumptively unconstitutional under the First Amendment.[44] The City argues that its regulations are content-neutral, but cannot find a case to support that stance, because there is none. The City

---

[44]*Reagan Nat'l Advertising v. City of* Austin, 972 F.3d 696, 702 (5th Cir. 2020*), rev'd and remanded sub nom. City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC,* 212 L. Ed. 2d 418, 142 S. Ct. 1464 (2022)

relies on cases having to do with the *location* of signs that did not regulate the message of the signs. The City's STR ordinances, to the contrary, regulate the *content* of what speakers may and may not say in their advertisements. The City's ordinances prescribe precisely what Plaintiffs' advertisements are required to include, and prohibited from including. The City's ordinances are facially content-based, without a doubt. A content-based restriction is subject to strict scrutiny regardless of any content-neutral justification the City might have.[45]

To survive strict scrutiny, the City must show a compelling government interest and that the ordinances employ *the least restrictive means* to accomplish that objective. The City cannot meet this demanding standard with its wildly overbroad ordinances, that deny whole classes of persons–corporations, usufructuaries, trust beneficiaries–the right to speak, with no sufficient justification. There is no set of circumstances under which the City's ordinances would be valid, given controlling Supreme Court precedents holding that corporate persons are entitled to the same constitutional rights and protections as natural persons.[46]

The City argues that Plaintiffs' speech is commercial and so should be analyzed under *Central Hudson*'s intermediate scrutiny factors. The problem the City has with that argument is that its ordinances specifically prohibit any commercial activity at residential STRs.[47] As we note above, the most recent CPC study and the vast majority of courts agree that residential STRs are a residential, not commercial use. But even if the STR ordinances has some legitimate

---

[45]*Reed v. Town of Gilbert* , 576 U.S. 155, 163, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015)quoting *Cincinnati v. Discovery Network, Inc.* , 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993).

[46]We discuss this at length in our Memorandum in Support of our pending Motion for Summary Judgment, Rec. Doc. 170-1, pp. 12-13.

[47]29,381 M.C.S. 26-618(a)(7).

sweep–which Plaintiffs deny–and even under *Central Hudson* intermediate scrutiny, the overbroad permitting restrictions render the ordinances unconstitutional.

The City's ordinances require a permit to advertise an STR, and (1) deny the permit to all corporate persons; (2) deny the permit to usufructuaries and trust beneficiaries, without any justification, thereby denying them equal protection and due process; (3) allow the City unbridled discretion to grant or deny exceptions to the distribution of permits by lottery; (4) require $1 million dollars of insurance, indemnifying the City, where no other residential lease requires the same; and (5) require permitees to consent to listing their names and addresses on a public-facing City website, thereby exposing them, their guests, and their property to criminal activity and harassment from those hostile to the emerging sharing economy. Settled Supreme Court precedents prohibit all this.

Even under *Central Hudson* analysis, the City's ordinances fail intermediate scrutiny. Under *Central Hudson*, a restriction on commercial speech must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose.[48] The City cannot even show that the ordinances as a whole directly advance their stated purposes, let alone that their unequal treatment of corporate persons does. Put another way, the City offers no lawful rational basis for excluding entire classes of persons from eligibility for STR permits, nor does the City offer a rational explanation of how the exclusion directly advances a legitimate government interest. *Central Hudson* instructs that if the governmental interest could be served as well by a more limited restriction on

---

[48]*Cincinnati v. Discovery Network, Inc.* , 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993); *Watchtower Bible & Tract Soc'y of N.Y.,Inc. v. Stratton*, 536 U.S. 150 (2002); *Lakewood v. Plain DealerPubl'g Co.*, 486 U.S. 750 (1988).

commercial speech, the excessive restrictions cannot survive.[49]

The City cites cases having to do with sign codes, that regulated depending on whether the signs were on-premises or off-premises. The cases are inapposite here because the City's ordinances regulate content, not location. But the Fifth Circuit's *RTM Media* case is instructive because, citing *Central Hudson*, it underlines the essential requirements, that a restriction on otherwise protected commercial speech are valid only if it (1) concerns lawful activity and is not misleading; (2) seeks to implement a substantial governmental interest, (3) directly advances that nterest, and (4) reaches no further than necessary to accomplish the given objective.[50] The City cannot show

The City argues that the ordinance regulates conduct and concerns whether a natural person lawfully possesses a NSTR permit. But, as Plaintiffs have noted before, we hope this Court knows a tautology when it sees one: the only thing that makes possession of the STR permit lawful or not is whether the City ordinance allows eligibility for it, and that is precisely what is at issue here. In plain English, the constitution does not allow the City to require a permit to speak, deny the permit to entire classes of persons without justification, then claim that their speech is unlawful because they lack a permit. Regrettably, an expletive is not permissible here.

This much is certain: the City does not have discretion to violate federal constitutional law by denying equal protection and due process rights to corporate persons, and other non-natural persons (against whom the City doesn't even attempt to rationalize its discrimination). The City relies on cases such as *Shelton*, which is inapposite as described above; and *Melancon*,

---

[49]*Central Hudson*, 447 U.S. at 565.

[50]*RTM,* citing *Metromedia,* 453 U.S. at 507, 101 S.Ct. 2882 (citing *Cent. Hudson,* 447 U.S. at 563-66, 100 S.Ct. 2343). See also, *U.S. v. Stevens*, *supra.*

which is inapposite because it was a 5th Amendment takings case involving licenses for taxicabs using the public streets, rather than fundamental constitutional rights to use private property for the purpose for which it is already zoned.

### C. The City's Ordinances Are Not Within Its Zoning Authority and Are Not Rational

#### 1. The City Has No Authority to Zone *the Duration* of Permissible Residential Use of Residentially Zoned Residential Property

In its 2018 Study, the CPC recommended that all residential neighborhoods be treated the same with respect to STR permits. And, as we discuss above, the 2023 CPC study reveals no new study done or information gathered, only conversations and conferences had among the players–the CPC team and the Council. The record reflects nothing supporting the City's irrational exclusions of entire residential neighborhoods from eligibility for residential STR permits. The exclusion is unsupported and irrational.

The City cites a state court case, *Palermo Land*, having to do with zoning of a landfill, that not only has nothing to do with the circumstances of this case, it also has nothing to do with the fundamental constitutional rights at issue here.

More important, the City lacks the authority to zone *the duration* of residential leasing in residential zones *at all*. Louisiana's enabling statute speaks for itself:

RS 33:4721 - Regulation of size and use of buildings

For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict **the height**, **number of stories**, and **size of structures**, **the percentage of lot that may be occupied**, **the size of yards, courts, and other open spaces**, **the density of population**, and **the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes**; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of

discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing.

Nothing there, nor anywhere else, authorizes a municipality to zone the *duration* of residential use of residential private property. Nor does federal law hand over any such authority.

Nothing in the extensive federal "police power" jurisprudence, beginning with *Euclid v. Ambler Realty,*[51] authorizes the City to prohibit homeowners from leasing their private homes, in residential districts, for residential purposes, for whatever length of time they choose.[52] And there is certainly nothing authorizing the City to grant to a lucky few, at its sole discretion, that fundamental right, which the City denies to others identically situated.

It has long been settled that municipalities may not enact legislation abridging federal constitutional rights, then declare those rights to be a "privilege" available only at the City's discretion. That's what the Fourteenth Amendment says, in addition to the caselaw we cite.

This case is distinguishable from *New Orleans v. Dukes*[53] because that case did not involve fundamental constitutional rights, nor use of private residential property for the purpose for which it was zoned. *Dukes* involved vending pushcarts in the public streets, which did not concern private property at all, and a change in zoning, which is not at issue here. All the property at issue here is residentially zoned private property, that Plaintiffs wish to lease for residential purposes.

---

[51]*Village of Euclid, Ohio v. Ambler Realty Co,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016 (1926).

[52]See *Hawai'i Legal Short Term Rental All. v. City & Cnty of Honolulu*, No. 22-cv-DKW-RT, 2022 U.S. Dist. LEXIS 187189 (D. Hawaii, Oct. 13, 2022), cataloguing 19 cases across the country holding that short term rentals are a residential use, and only 5 to the contrary.

[53]*City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)

The City cites *Yur-Mar v. Jefferson Parish*, which the Fifth Circuit noted at the *Marfil* argument is not precedential, so not something they generally pay much attention to. We won't either, except to note that the court in that case specifically noted that it did not concern fundamental rights, as this case does; and it involved regulation of business hours for what are traditionally known as "vice uses": bars and other adult entertainment venues, which are inapposite to Plaintiffs' use of residences for residential use.

*Mayes v. City of Dallas* is also inapposite because Plaintiff there wished to alter the appearance of a residence in a historic district. Here, Plaintiffs simply wish to use their residences for the same residential use as their neighbors, without alteration.

The rational basis test requires not only that the City show a legitimate governmental interest, but also that its ordinances *further* that interest.[54] The City has not and cannot show that.

### 2.  The City's Lottery System Is Invalid Because Its Entire Permitting System Is Invalid

The City's STR ordinances deny the fundamental property rights at issue here to the vast majority of property owners, awarding only one permit per city square and none at all if a B&B is previously located there. The City has not and cannot justify either (1) the exclusion of the vast majority of residential property owners from eligibility, thereby granting a monopoly to commercial STRs, which are exactly the same commodity (residences) serving exactly the same market (short term rental of residences); or (2) the preference for B&Bs in residential districts, which again offer essentially the same commodity to the same market.

The City cites another taxicab case here in support, which is inapposite for the same reasons as the one distinguished above: taxicabs operate in the public streets and do not concern

---

[54]*Mikeska*, *supra*.

fundamental constitutional rights implicated in the leasing of a private home.

### 3. The City's Limitation on the Number of Bedrooms That May Be Advertised and Rented is Arbitrary and Capricious

The CPC recommends that NSTRs be allowed to rent five bedrooms, as commercial STRs are and as B&Bs are. The City says its advertising restrictions are intended to prevent fraudulent and misleading advertising, but there is no evidence whatsoever that any has occurred. The Fifth Circuit rejected this same argument in *Abbey v. Castille*.[55] Further, there are other remedies for fraudulent advertising, both state and federal–which the Fifth Circuit also noted in that same case.

The City argues that the bedroom limitation is intended to preserve "livability" and "quality of life" in neighborhoods, but the City does not and cannot explain why a 31 day rental, or a permanent residence, can occupy as many bedrooms as a residence provides without affecting the neighborhood's livability or quality of life, but a 29 day rental cannot. The City's argument is irrational, and it is entirely unsupported in this record.

### D. The City's Ordinances Violate Plaintiffs' Fourth Amendment Rights

The City begins this section with the incorrect statement that none of the Plaintiffs have attested that the City has conducted warrantless searches of their homes. That is simply incorrect: Melissa Hignell's Declaration, Rec. Doc. 35-7, affirms precisely that.

The City also conflates the availability of a hearing after being accused of a violation with the right to be free from liability for the violation in the first place. That is what Plaintiffs' Fourth Amendment claim is based on.

The City's STR ordinance requires onerous record-keeping by home owners pertaining to

---

[55]*Abbey v. Castille,* 712 F.3d 215 (5th Cir. 2013).

their guests, and requires home owners to turn over these records to the City anytime the City requests them, without any showing of probable cause. The ordinances also require permit applicants to attest that they will comply with all requirements of the STR ordinances, and attest that they have done so to renew a permit. That is penalty enough to trigger Fourth Amendment scrutiny, and it is assessed without a hearing before a neutral decisionmaker.

It does not satisfy Fourth Amendment requirements to require production of personal records, without any showing of  probable cause, then require appearance at a hearing to dispute imposition of a penalty for a clear violation of the Ordinance's requirement to produce records on demand. The requirements of the ordinance are unconstitutional regardless of whether a penalty is imposed for their violation. The court in *Airbnb v. N.Y.*[56] said so, relying on established Supreme Court precedents.

### E.  The City's CZO Ordinance Prohibits Social Gatherings In STRs

The City simply misstates the plain language of the CZO's STR ordinance. CZO Section 21.8.C.18 says this: "Use of the short term rental for commercial **or social** events shall be prohibited." It doesn't get much clearer than that, in plain English language.

Other courts have found such a prohibition violations the First Amendment's freedom of assembly clause.[57] And the prohibition is irrational: a primary residential use is gathering with friends and family, cooking, watching tv. The City doesn't define what comprises a "social event" so that could be anything from a child's birthday party, a gathering for cocktails before a movie. . . the list of what that expansive, undefined prohibition entails is virtually endless. And it is unconstitutional.

---

[56]*Airbnb, Inc. v. City of N.Y.*, 373 F.Supp.3d 467 (S.D. N.Y. 2019).

[57]*Zaatari v City of Austin,* 615 S.W. 3d 172 (Tex.App.2019).

**F.  The City Admits that the City Council Has Unbridled Discretion to Approve or Deny Exceptions**

The City admits that the City Council has complete discretion to grant or deny exceptions to the NSTR square block limitations, regardless of what the CPC recommends. The Council has no obligation to follow the CPC's recommendations, and frequently doesn't, as discussed above. That the City argues otherwise is a bit ridiculous, given the language of the CZO ordinance.

**G.    This Baffling Paragraph**

This paragraph is simply perplexing. The Fifth Circuit's *Hignell-Stark* decision carefully explained that it is just as unconstitutional to discriminate against locals as out-of-state residents. The Fifth Circuit also didn't address any claims except under the Commerce Clause and the Fifth Amendment. The Court didn't decide First Amendment claims, didn't decide Fourth Amendment claims, didn't decide anything about the provisions of the current ordinances, and didn't decide any of the claims of plaintiffs Kurt Klebe, Zachary Bennett, or Summit NOLA III at all. The City's arguments here are entirely without merit.

**CONCLUSION**

For the reasons set forth hereinabove, and in our Memorandum in Support of our pending Motion for Summary Judgment, Plaintiffs respectfully suggest that the City's motion for summary judgment be **DENIED.**

Respectfully submitted,

/s/ Dawn Adams Wheelahan
Dawn Adams Wheelahan
Trial Counsel
La. Bar No. 19263
1616 Valmont Street
New Orleans, Louisiana 70115
Telephone: 512-689-1153
Email: dwheelahan@gmail.com